# DECLARATION OF
# VANESSA CRUZ

## DECLARATION OF VANESSA CRUZ

I, Vanessa Cruz, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.     I am currently employed by CEVA Freight, LLC ("the Company") as a Administrative Clerk II in Carson California.  I have been an employee of the Company or its predecessor entities since February 2005. I have held the position of Administrative Clerk since October 2007.  Before this time, I worked as a Customer Service Representative.

3.     As an Administrative Clerk, my duties include doing all the administrative work for the warehouse. When the drivers arrive, I take their bills, create labels and do data entry.

4.     I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, from Monday through Friday.  When I worked in Customer Service, my shift was from 8 a.m. to 4 p.m.   When I shifted to Administrative Clerk, however, my shift changed to 4 p.m. to 12:30 in the morning.

5.     My current supervisor is Javier Trujillo.  Over the course of my employment with the Company, I have also been supervised by Byron Briscoe.

6.     When I was hired by the Company, I received an Employee Handbook ("handbook").  The handbook contained the Company's various policies.  These policies can also be found on the Company's intranet website.  After I received the handbook, I reviewed the various policies contained in it.

7.     Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

TTLER MENDELSON
PROFESSIONAL CORPORATION
2040 Century Park East
5th Floor
s Angeles, CA 80067.3107

1.

DECLARATION

8.     With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.

9.     During my employment with the Company I have always taken my unpaid meal period. I always take my 30 minute lunch period at 9 p.m. Each day, I bring lunch and eat in the break room with three or four co-workers who work same shift as me.

10.     At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period.

11.     Based on my review of the handbook and other training and communications I received during my employment, I also understood that I was permitted to a paid rest break of fifteen minutes for each four hours worked.

12.     During my employment with the Company I have regularly taken my rest period. I used to be a smoker and, as such, was very diligent about taking my rest break. Since I quit smoking in October 2010, I now use my rest breaks to chat with co-worker or a buy a soda or chips. I take my first rest break around 6:30 p.m., which is when our temporary worker arrives for the evening. I take my second break around 10:30 p.m. or 11 p.m.

13.     There are times when I choose not to take my rest breaks because I wanted to finish early instead of being at work until 1:00 a.m. If I did not take a rest break, it was always my own personal choice.

14.     At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.

15.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday on the computer system. I am also required to accurately record when I take my meal period by clocking in and out using my badge number. I also understand that "off-the-clock"

2.

'TLER MENDELBON
'ROFESSIONAL CORPORATION
1049 Century Park East
5th Floor
Angeles, CA 90067.3107

DECLARATION

1  work is strictly prohibited (i.e., work without reporting any time worked on my time

2  records).

3        16.    There have, however, been occasions when I forgot to clock back

4  in when I return from lunch. When this happened, I usually submit a missed punch

5  slip.  Javier then approves the missed punch slip.  My supervisor has never refused to

6  correct my time punches or to compensate me for all of the hours I worked.

7        17.    I always review my time records and "F-10" for my hours worked.

8  I especially make sure to review these records when I have submitted a missed punch

9  slip. I have always been compensated correctly.

10        18.    The Company has always paid me accurately for the all the time  I

11  worked.

12        19.    As part of my job as an Administrative Clerk II, I enter shipping

13  transactions on the Company's computer systems.  I am informed that some of these

14  electronic transaction records suggest that someone with my user identification

15  entered transactions during hours when I was not punched in on CEVA's timekeeping

16  system.

17        20.    For example, there is a record of my having made a transaction on

18  July 4, 2008 at 3:32 p.m. when I did not clock in during that time.  Aside from the fact

19  that this is a holiday and I do not believe I was working that day, the timestamp is

20  outside my 4 p.m. to 12:30 a.m. shift. I do not have an explanation for how these

21  records and timestamps were created, but I do not believe I personally entered them.

22

23

24  //

25  //

26  //

27  //

28

TYLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
s Angeles, CA  90067-3107

3.

DECLARATION

21.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.   Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this __2__ day of __May__, 2010, at __Carson__, California.

_____
VANESSA CRUZ

DECLARATION

ITTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

# DECLARATION OF STEPHEN ALEXANDER HART

## DECLARATION OF STEPHEN ALEXANDER HART

I, Steven Alexander Hart, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.    I am currently employed by CEVA Freight, LLC ("the Company") as an Domestic Supervisor in Carson, California.  As a Domestic Supervisor I am classified as an exempt employee.  I have held my current position since November 2010.  I began my employment with the Company as a non-exempt Forklift Operator in 2006 and was a part-time employee during my first eight (8) months working as a Forklift Operator. I worked as a Forklift Operator until July 2007 when I was promoted to a Domestic Specialist, another non-exempt position.

3.    My duties and responsibilities from Forklift Operator to Domestic Supervisor varied greatly.  As Forklift Operator, for the first few months, I operated a Forklift in the warehouse.  After several months, my duties changed and I mainly worked at a workstation in the warehouse processing incoming trailers.  I rarely spoke to customers and spent the majority of my time entering information into the WorldPort shipping system.  In comparison, when I became a Domestic Specialist, I worked in the Company offices and routinely spoke to customers regarding their shipment orders.  I also processed shipments.

4.    For the first 8 months of employment with the Company, I worked a part-time schedule from 8:00 a.m. to 2:00 p.m.  When I became full time, my schedule changed to 8:00 a.m. to 4:30 p.m.  After I was promoted to Domestic Specialist, my schedule changed to 3:00 p.m. to 12:00 p.m.  More recently, when I was promoted to Domestic Supervisor, an exempt position, my schedule changed again to 2:00 p.m. to 12:00 p.m.

DECLARATION OF STEPHEN ALEXANDER HART

5.     I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson California 90746. I was transferred to Carson when it opened in 2010. Until I was transferred, I worked in our Torrance facility.

6.     My current supervisor is Michelle Abbey. Over the course of my employment with the Company, I have also been supervised by Jose Vega and Phil Asenas. I have also had various managers throughout my employment with the CEVA.

7.     When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. These policies can also be found on the Company's intranet website. After I received the handbook, I reviewed the various policies contained in it.

8.     Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

9.     With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.

10.    During my employment with the Company as a non-exempt employee I have almost always taken my unpaid meal period within the first five hours of arriving for work. In fact, I can only recall one time that I did not take my meal period. I was working at the time as a part-time employee and worked over six hours and forgot to take my meal period. At that time the Company was using manual time records and as soon as my then manager, Al Banks, reviewed my handwritten time record he noticed that I did not take my meal period and informed me that I must take my meal period when I work more than six hours. The Company then compensated me for the time I spent working when I should have been taking my lunch.

LER MENDELSON
MENDELSON CORPORATION
18 Century Park East
5th Floor
ngeles, CA 90067.3107

DECLARATION OF STEPHEN ALEXANDER HART

11. At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period. I have also never heard of, nor seen, anyone else at the Company prevented from taking their meal periods.

12. Based on my review of the handbook and other training and communications I received during my employment, I also understood that I was permitted to a paid rest break of fifteen minutes for each four hours worked.

13. During my employment with the Company as a non-exempt employee, I have always taken my rest periods afforded me by the Company. I am a smoker and therefore always take my fifteen-minute rest breaks. When I was a part-time employee I was provided and always took at least one rest break, if not more. When I became a full-time employee I was provided and always took two rest breaks, if not more.

14. At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company. I have also never heard of, nor seen, anyone else at the Company prevented from taking their rest breaks.

15. While working as an non-exempt employee of the Company, I have understood that I am required to accurately record the start and end of my workday by clocking-in-and out on the Kronos time recording system. I am also required to accurately record when I take my meal period by also clocking-in-and-out on Kronos. I also understand, and that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).

16. Additionally, I routinely review my time records for each pay period to ensure they are accurate. I have never located any error. The Company has always paid me accurately for the all the time I worked.

17. I have on occasion, while employed as a non-exempt employee, worked overtime while employed by the Company. Whether and when I work overtime was determined entirely by my workload on a given day, by the particular

3.

LER MENDELSON
Prasional Corporation
19 Century Park East
5th Floor
Angeles, CA  90067 3107

1  account I was working on and any particular exigent circumstances or other time

2  requirements, by which shift I worked or by the availability of other employees to

3  assist with completing required work.

4       18.    The Company has always paid me accurately for any overtime I

5  worked.

6       19.    As part of my job as a Forklift Operator and Domestic Supervisor I

7  utilized the WorldPort shipping system.  I have never used either the FastTrack or

8  Class shipping systems during my employment with the Company.  Also, as described

9  above, my use of WorldPort's mechanisms varied from when I worked as a Forklift

10  Operator than when I worked as Domestic Specialist.  As Forklift Operator, I was

11  limited to processing incoming trailers into the warehouse. As a Domestic Specialist, I

12  process shipments from our CEVA station to the customer receiving the delivery.

13       20.    I have been informed that certain transactions have occurred on

14  WorldPort using my username and password when I was clocked-out on Kronos.  For

15  example, I was informed that on April 17, 2007, I clocked out at 2:44 p.m. and a

16  transaction bearing my username and password was made long after I clocked-out at

17  7:38 p.m.    During my employment with CEVA, I have not worked off-the-clock.

18  Accordingly, I did not make this transaction nor any other off-the-clock transaction

19  attributed to me.

20       21.    However, during April 2007 I was working in the warehouse and I

21  often left the workstation computer on while logged into WorldPort with my

22  username and password.  In fact, we have several workstation computers in the

23  warehouse and I believe that I may have been logged onto WorldPort on several of

24  them at the same time.  I believe that in this case above, another employee entered a

25  transaction using my username and password because I left the computer on while

26  logged into my WorldPort account.

27       22.    I have provided this declaration voluntarily.  I was not promised

28  any benefit, nor threatened in any way, in exchange for the testimony I have provided

LER MENDELSON
PROFESSIONAL CORPORATION
19 Century Park East
5th Floor
Angeles, CA 90067-3107

4.

DECLARATION OF STEPHEN ALEXANDER HART

1    in this declaration.   Prior to signing this declaration, I was provided with a full
2    opportunity to carefully review this declaration and freely make any corrections and
3    additions of any kind.  I verify that the information I have provided in this declaration
4    is true and correct.

5              I declare under penalty of perjury under the laws of the United States and
6    the State of California that the foregoing is true and correct.

7              Executed this 2nd day of May , 2011, at Carson, California.

8

9    _____
10                       Stephen Alexander Hart

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

'LER MENDELSON
JFESSIONAL CORPORATION
49 Century Park East
5th Floor
ngeles, CA  90067 3107

DECLARATION OF STEPHEN ALEXANDER HART

# DECLARATION OF JACQUELYN LOWDEN

## DECLARATION OF JACQUELYN LOWDEN

I, Jacquelyn Lowden, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.     I am currently employed by CEVA Freight, LLC ("the Company") as a Administrative Clerk II in Carson, California.  I have been an employee of the Company or its predecessor entities for approximately six years.  Prior to working at the Carson facility, I worked at the Company's Torrance, California location.

3.     Previously, I have also held the position of Administrative Clerk I for approximately three years.   As an Administrative Clerk I my duties included making residential appointments.  As an Administrative Clerk II, my duties include making business appointments, dealing with drivers, making residential appointments, coordinating movement orders for drivers, doing pick ups and doing "out for deliveries."

4.     I currently work at the Company's Carson Facility located at 18120 Bishop Ave., Carson, California  90746, from Monday through Friday.  My shift typically starts at 7:30 a.m. and ends at through 4:30 p.m.  I have previously worked a slightly different shift, which was Monday through Friday, from 8:00 a.m. until 5:00 p.m.

5.     My current managers are Phillip Asenas and Steve Hart.  Over the course of my employment with the Company, I have also been supervised by Sue McGuire, Millie Thorbridge, and William Leonard.

6.     When I was hired by the Company, I received an Employee Handbook ("handbook").   The handbook contained the Company's policies and procedures regarding clocking in and out, meal periods, rest periods, vacation, and dress code.  These policies can also be found on the Company's intranet website.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

G:\Lowden Decl.doc                                    1.

DECLARATION

After I received the handbook, I reviewed the various policies contained in it. Patricia Shin from Human Resources ensured that all employees thoroughly read the handbook before signing their paperwork acknowledging the handbook.

7.     Based on my review of the handbook, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

8.     With regard to meal periods, I have understood throughout my employment that I am been permitted to take an unpaid meal period of one hour during each of my shifts. The meal period must be taken before the fifth hour of each shift.

9.     During my employment with the Company I have always taken my unpaid meal period. I have never missed my meal period in my six years of working at the Company.

10.    I take a one hour meal period and I almost always eat my lunch in my car. I sometimes bring my lunch to work and sometimes purchase lunch offsite.

11.    On one or two occasions during my six years at the Company, I have taken a meal period after the fifth hour of my shift. At the very latest I may have taken my meal period approximately thirty minutes after the fifth hour of my shift. However, I could have taken my meal period before the fifth hour of my shift. The only reason why this occurred on these one or two occasions was because I simply lost track of time. In fact, my manager at the time was very strict about reminding employees to take their meal periods before the fifth hour of their shifts. When this occurred, my manager sternly reminded me that I was to take my meal period before the fifth hour of my shift.

12.    At no time was I ever told by any of my managers, or anyone else at the Company, that I could not take a meal period.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107

G:\Lowden Decl.doc

2.

DECLARATION

13.     Based on my review of the handbook, information shared with me by my managers, and the Human Resources department, I also understood that I was permitted to a paid rest break of fifteen minutes for each four hours worked. My rest breaks are actually written into my schedule by my manager.

14.     During my employment with the Company I have always taken my rest periods. I take my first fifteen-minute rest period two hours into my shift. I take a second fifteen-minute rest period approximately one and a half hours after my meal period.

15.     I have never chosen not to take a rest break. I have never been asked not to take a rest break.

16.     At no time during my employment with the Company was I ever told by any of my managers, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company. In fact, my current managers encourage me to take my rest periods.

17.     On several occasions during my six years with the Company, I have taken my rest periods slightly after the fourth hour of my shift. This has simply occurred because I lost track of time, or was on a phone call with a customer who did not want to be transferred, or was otherwise busy in some way. However, I took my rest period late solely by choice. I have never been asked by anyone to skip my rest period or delay my rest period.

18.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday by punching in when I arrive at work and punching out at the end of my workday using the Kronos system. I am also required to accurately record when I take my meal period by logging in and out in the same manner.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

G:\Lowden Decl.doc

3.

DECLARATION

19.     I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).  I have never worked off-the-clock, and I have never been asked by anyone to do so.

20.     There have, however, been occasions when I forgot to punch in at the beginning of my shift, punch out for lunch, punch back in after lunch and punch out at the end of the day.  When this happened, I always submitted a missed punch slip.  One of my managers then approves the missed punch slip.  My managers have never refused to correct my time punches or to compensate me for all of the hours I worked.

21.     We are supposed to review our time records at the end of every day.  We are constantly reminded to check our time records at the end of each day.  I routinely review my time records approximately at the end of each week.  I have found an error approximately six times in the past six years.  On these occasions, I simply fill out a missed punch slip and submit it to my manager.  I then show my manager the mistake on my time sheet.  My managers have always approved these changes and the Company always corrects the error and pays me for my time worked.

22.     The Company has always paid me accurately for the all the time I worked.

23.     I have on occasion worked overtime while employed by the Company.

24.     Typically I only work overtime during the last two months of the year, due to the increase in freight during those times.  During this time of year, I work overtime approximately one hour per day or, occasionally, four hours on a Saturday.  Overtime must be pre-approved.  Whether and when I work overtime is also determined by the availability of other employees to assist with completing the required work.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107

G:\Lowden Decl.doc

4.

DECLARATION

25.     The Company has always paid me accurately for any overtime I worked.

26.     As part of my job as an Administrative Clerk II, I enter shipping transactions on the Company's computer systems.  I am informed that some of these electronic transaction records suggest that someone with my user identification entered transactions during hours when I was not punched in on Kronos.  I also understand that some of these transactions were input several hours after I clocked out.  There is absolutely no way that I could have entered these transactions myself.  My manager would not have permitted me to clock back in even two hours after my ship.  Therefore, I am not personally responsible for these transactions.  It is possible that we had a temporary employee at that time who did not have his or her own login information and that I shared my username and password with him or her.  This would have been even more likely during the last few months of the year or in January, when the work load is heightened.

27.     During my employment with the Company, I have not worked while off the clock, nor have I input any transactions during the times stated in these records.

28.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.  Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

G:\Lowden Decl.doc

DECLARATION

1

2          I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

3

4    Executed this __29__ day of _April_ 2010, at __CARSON__ , California.

5

6

7    JACQUELYN LOWDEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

G:\Lowden Decl.doc

DECLARATION

# DECLARATION OF LORENZO MOLINA

## <u>DECLARATION OF LORENZO MOLINA</u>

I, Lorenzo Molina, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2. I am currently employed by CEVA Freight, LLC ("the Company") as an Operations Specialist in Carson, California.  I have been an employee of the Company or its predecessor entities for approximately 15 years.   When I started with the Company, I worked in the dock as a freight handler in the Torrance branch.

3. As an Operations Specialist, my duties included routing freight and making bookings with airlines to ensure delivery.

4. I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, from Monday through Friday.  My shift typically starts at 7 a.m. and ends at 4 p.m.

5. My current supervisor is Ruben Aguilera.  Over the course of my employment with the Company, I have also been supervised by Pat Dorworth.

6. When I was hired by the Company, I received an Employee Handbook ("handbook").  The handbook contained the Company's various policies.  These policies can also be found on the Company's intranet website.  After I received the handbook, I reviewed the various policies contained in it.

7. Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

8. With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1.

DECLARATION

9. During my employment with the Company, I have always taken my unpaid meal period. I generally start my lunch period at some time between 11 a.m. and 11:45 a.m. Most of the time, I bring my own lunch from home. If I do not bring my lunch from home, I will drive to a fast food place, such as McDonalds. I generally eat in my truck.

10. At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period.

11. Based on my review of the handbook and other training and communications I received during my employment, I also understood that I was permitted to a paid rest break of fifteen minutes for each four hours worked.

12. During my employment with the Company, I have always taken my rest period . I typically take my first rest break around 9 or 9:30 a.m. and my second break around 3 p.m. During my rest breaks, I will get up to the restroom and walk around the building. Sometimes I will buy a little snack. Other times, I will go to my car and listen to music there.

13. At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.

14. During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday by recording my time in and out on the clock on the computer. I am also required to accurately record when I take my meal period.

15. I understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records). I make sure to clock in whenever I begin working and clock out whenever I stop working.

16. Additionally, I consistently review my time records each day and my paychecks each pay period to ensure they are accurate. The Company has always paid me accurately for the all the time I worked.

2.

DECLARATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

17.   I have on occasion worked overtime while employed by the Company. I do not work overtime recently, but worked a lot of overtime a few years ago, around 2007. The Company has always paid me accurately for any overtime I worked.

18.   As part of my job as a Operations Specialist, I enter shipping transactions on the Company's computer systems. I am informed that some of these electronic transaction records suggest that someone with my user identification entered transactions during hours when I was not punched in on the Company's timekeeping system. I also understand that some of these transactions were input hours well before I begin my shift.

19.   I have had some issues with timekeeping and clocking since before 2007. When an employee clocks in or out in the computer system, they must type in their employee identification number. I have had multiple issues in the past with other employees typing in my employee number instead of their own.

20.   There have been times, when this error occurs, that I have gotten an apologetic email from an employee in Texas or Hawaii admitting their error. Other times I will not get a notifying email and will discover the error when I check my time. I always fill out a missed punch slip to correct the error. Due to these errors, I always carefully review my time records and payments to ensure accuracy. I am always compensated correctly as to time actually worked.

21.   One such error made it appear that I arrived into the office at 4:24 a.m., when I have not come into the office that early. At the time of such a timestamp, I was working a later shift, 2:30 p.m. to 10:30 p.m. As a result, when I clocked in for that day, the computer read it as a clock *out*, leaving the incorrect appearance that I worked a ten-hour shift without a meal period.

22.   I believe there is no subsequent clock "in" time for that same day when I ended my shift because in 2007 I was working a lot of overtime, which meant I

DECLARATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

worked past midnight. Thus, the timestamp would automatically clock me in at midnight the *following* day.

23. Though records may indicate that I left work at 2:30 p.m., I really *began* my shift then. This means that a transaction at 7:16 p.m. is well within my shift and was quite probably entered by me.

24. During my employment with the Company, I have not worked while off the clock, nor have I input any transactions during the times stated in these records. I am not sure why the records are not revised to indicate the corrections I submitted via missed punch slips.

25. I have provided this declaration voluntarily. I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration. Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind. I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this _0 6_ day of May, 2011, at Carson, California.

LORENZO MOLINA

c

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

# DECLARATION OF EDUARDO MORA

## DECLARATION OF EDUARDO MORA

I, Eduardo Mora, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2. I am currently employed by CEVA Freight, LLC ("the Company") as an Operations Specialist IV in Torrance, California. I have been an employee of the Company or its predecessor entities for approximately 13 years. I have also held the positions of Export Specialist and Export Specialist Supervisor, and have also worked at the Company's facilities in Hawthorne and Englewood, California. However, I have been working from the Company's Torrance location for approximately the last 7 years. As an Operations Specialist IV my duties primarily consist of managing the logistics of package shipments around the world.

3. In my 13 years with the Company, I have never held the title of "Freight Forwarder," nor am I aware of any other employee within the Company who has held this title. Although the Company is in the business of freight forwarding, to my knowledge, this is not an actual job title.

4. I currently work at the Company's Torrance facility located at 19600 Western Ave., Torrance, California 90501. My typical work schedule is Monday through Friday, from 7:00 a.m. to 4:00 p.m.

5. My current supervisor is Eddie Centeno. Over the course of my employment with the Company, I have also been supervised by Camille Utter, John McDonald and Steve Arthur.

6. When I was hired by the Company, I received an Employee Handbook ("handbook"), which I reviewed. The handbook contains the Company's various policies, including its meal break policy and rest break policies. I believe the Company's policies can also be found on the Company's intranet website.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

1.

DECLARATION OF EDUARDO MORA

7.      Based on my review of the handbook, trainings I have received, and discussions with Human Resources ("HR"), I am aware of the meal and rest break policies at the Company.  Specifically, I have been informed on multiple occasions by HR that I am required to take my lunch break within the first 5 hours of starting my shift.  I am also aware that I am entitled to 2 separate 15 minute rest breaks every day that I work.

8.      During my employment with the Company I have almost always taken a one hour lunch break every day.  About half of the time I will bring some food from home and eat in the break room.  The other half of the time, I usually go out to a restaurant with my co-workers and get something to eat.  On average, I would estimate that I skip my lunch break 1-2 times per year, for personal reasons.  Usually, I skip my lunch break when I need to leave work a little early and have something that I need to get done.  In every instance in which I have skipped my lunch, it has been entirely my own choice, and none of my supervisors or managers have ever asked me to skip my lunch break.

9.      On those few occasions where I have skipped m lunch break, I was required to complete, and did complete, a missed meal period authorization form.  On each occasion, I submitted it to my supervisor or manager who approved it.  Additionally, I have always been compensated for the time that I spent working through my meal period, as I did not clock out during this time.

10.      At no time have I ever been told by any of my supervisors, managers, or anyone else at the Company, that I could not take a meal period.  On every occasion where I did not take a meal period, it was my always my own choice.

11.      In addition to my meal period, I am also aware that I am entitled to 2 separate 15 minute breaks each day that I work.  As I mentioned, I learned about this policy in the Company's handbook, in addition to discussions with my supervisors and HR.  Specifically, I can recall my former supervisor, Camille Utter, reminding me on more than one occassion that I need to take my rest breaks.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

2.

DECLARATION OF EDUARDO MORA

Case 2:09-cv-04957-CAS-SS   Document 44-2   Filed 05/20/11   Page 27 of 88   Page ID
#:1850
Case 2:09-cv-04957-CAS-RC   Document 24-2   Filed 07/26/10   Page 76 of 100   Page ID
#:1021

12.     Typically, I do not take my rest breaks, however, this is my own choice.  I generally will not take my rest breaks because I do not have any desire to take my rest breaks.   None of my supervisors, managers, or anyone else at the company has ever told me or asked me to skip my rest breaks.

13.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday, and I do so in our computer program called Kronos.  In addition to recording the start and end of my workday,  I also record the time that I clock out for lunch and also when I clock back in.

14.     I routinely review my time records for each pay period to ensure they are accurate. I am required to sign a certification stating that all the hours I have entered are accurate before they are submitted to payroll.   I cannot recall any instances where my time records were inaccurate, as I generally check my time records every day before going home.

15.     On average, I would estimate that I work approximately 3 hours per week in overtime.  Although it is sometimes necessary to get pre-authorization to work this overtime, other times the Company knows that we are busy and it doesn't require us to obtain this pre-authorization.  I have always been paid for all overtime hours which I have worked, and to my knowledge, I have always been paid correctly for this time worked. I have never been disciplined for working overtime without first obtaining pre-authorization, however on certain occasions, I have been told that I need to obtain pre-authorization before working overtime.

16.     I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).  I have never performed any off-the-clock work since being employed with the Company, nor have any of my managers, supervisors, or other employees of the Company ever asked me to work off the clock.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

3.

DECLARATION OF EDUARDO MORA

1      17.    I have provided this declaration voluntarily.  I was not promised
2  any benefit, nor threatened in any way, in exchange for the testimony I have provided
3  in this declaration.  Prior to signing this declaration, I was provided with a full
4  opportunity to carefully review this declaration and freely make any corrections and
5  additions of any kind.  I verify that the information I have provided in this declaration
6  is true and correct.

7      I declare under penalty of perjury under the laws of the United States and
8  the State of California that the foregoing is true and correct.

9      Executed this _1st_ day of _July_, 2010, at _Torrance_, California.

11  Eduardo Mora

DECLARATION OF EDUARDO MORA

# DECLARATION OF EDUARDO MORA

I, Eduardo Mora, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.    I am currently employed by CEVA Freight, LLC ("the Company") as an Operations Specialist IV in Carson, California. I have been an employee of the Company or its predecessor entities for approximately 14 years. I have also held the positions of Export Specialist and Export Specialist Supervisor.

3.    When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. These policies can also be found on the Company's intranet website. After I received the handbook, I reviewed the various policies contained in it.

4.    Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's time recording policies.

5.    I currently work at the Company's Carson facility located at 18120 Bishop Ave, Carson, California 90746, Monday through Friday at 6:00 a.m. until 3:00 p.m. I began my current schedule starting in January 2011. Prior to then, and for approximately the last seven years, my schedule was from 7:00 a.m. to 4:00 p.m. Monday through Friday.

6.    When I arrive for work, I log onto my assigned computer by entering my username and password to unlock the computer. Once the computer is unlocked, I then immediately open the Company's time recording program, Kronos, enter my employee identification number, and clock-in. I then remain clocked-in until I take my lunch. I clock-out at the beginning of my lunch period and then back-in when I return from lunch. Also, once the computer is unlocked, I am then able to

1.

1  access several different programs set to my preferences such as Outlook and our

2  various shipping systems discussed in detail below.

3         7.     During my employment with the Company, I have always

4  understood that I am required to accurately record the start and end of my workday. I

5  am also required to accurately record when I take my meal period by.  I also

6  understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting

7  any time worked on my time records).

8         8.     On occasion however, my computer fails to work.  When this

9  occurs I am forced to work on a different Company computer.  I look around my work

10  area to see if there any other employees who out for the day or if there is an otherwise

11  vacant computer in the office. After locating an open computer, as with my assigned

12  computer, I log onto the computer by entering my username and password.  Once the

13  computer unlocks, I am again able to access the various Company programs set to my

14  preferences.

15         9.     As part of my job as an Operations Specialist, I enter shipping

16  transactions on the Company's shipping systems. During my employment, the

17  Company has utilized three separate shipping systems: WorldPort, Class and Fastrack.

18  The Company no longer utilizes FastTrack.

19         10.    During my employment with the Company, I have used all three

20  shipping systems. Currently, I only use WorldPort and Class. To log onto these two

21  shipping systems, I enter my username and password. My Class username and

22  password are different than my WorldPort username and password.  These usernames

23  and passwords are also different than my user identification number and password I

24  use to log onto my computer upon arriving for work and they are also different that

25  my Kronos identification number. ·I also had a different username and password for

26  FastTrack.

27         11.    When I am logged onto a shipping system with my username and

28  password I can then process a shipment and enter information accordingly to each

TLER MENDELSON
IOFESSIONAL CORPORATION
2d9 Century Park East
5th Floor
Angeles, CA  90067-3107

2.

DECLARATION OF EDUARDO MORA

1    process.  While logged on with my username and password, if I enter any information

2    to a shipment, I am informed and believe that the system captures my information and

3    saves it along with the time I entered the information as part of the shipment history

4    for that shipment.

5          12.    Because the Company wants to keep accurate shipping records, we

6    are discouraged from providing our shipping system usernames and passwords to

7    other employees.  However, various occasions have arisen where I have used another

8    employees username and password or another employee has used mine.  These

9    situations usually arise in two scenarios:

10         i.  New employees do not receive their usernames and passwords to

11             enter the shipping systems right away and it can sometimes take

12             several weeks to receive them.  In the interim, if they need to

13             access a shipping system and make changes or update a shipment,

14             they are forced to borrow another employee's username and

15             password.  If the new employee then adds information to a

16             shipment, that parcel's shipping history captures the information of

17             the owner of the username and password utilized to access the

18             shipping system.  Throughout my employment with the Company,

19             I have lent my usernames and passwords for the various shipping

20             systems to several other employees.

21         ii.  Usernames and passwords also expire if you do not use them.

22             Although I use Class and WorldPort, and previously FastTrack,

23             some other employees do not use all of the shipping systems.

24             Although I am informed and believe that when an employee is

25             hired they are assigned a different username and password for each

26             shipping system, if an employee does not access a particular

27             shipping for some time, his or her password will expire.  If that

28             employee does not regularly use that shipping system, they will

TLER MENDELSON
NFESSIONAL CORPORATION
149 Century Park East
5th Floor
ngeles, CA  90067-3107

1            typically not request another password.  However, if that employee

2            then need to use a shipping system he or she no longer has access

3            to because the password has expired, he or she will need to borrow

4            another employee's username and password.   Again, if that

5            employee makes a change to a shipment while logged onto the

6            shipping system with another employee's username and password,

7            that shipment history captures the information of the owner of the

8            username and password and will not show that the borrower made

9            a change to the shipment.

10         13.   Although I have entered many transactions on our shipping

11 systems I have never done so while working off-the-clock.  I am informed, however,

12 that some of the shipping electronic transaction records suggest that I was working

13 when I clearly was not.  For example, on July 15, 2010, a transaction record on

14 FastTrack indicates that I entered a transaction on at 3:41 a.m., Pacific Standard Time.

15 However, I did not clock-in that morning until 5:58 a.m., Pacific Standard Time, as

16 shown on my time records.  Similarly, on June 9, 2010, another transaction record

17 indicates that I entered a transaction on FastTrack on at 5:20 a.m., Pacific Standard

18 Time.  However, I did not clock-in that morning until 6:46 a.m., Pacific Standard

19 Time.  I am certain that I did not enter either of these transactions. I believe that

20 someone with my username and password entered these transaction and any other off-

21 the-clock transactions bearing my username.

22         14.   During my employment with CEVA, I have not worked while off-

23 the-clock, nor have I input any transactions during the times stated in these records.

24 Although I am not certain who entered these transactions, I can only suggest it was

25 another employee to whom I provided my username and password.

26         15.   I have provided this declaration voluntarily.  I was not promised

27 any benefit, nor threatened in any way, in exchange for the testimony I have provided

28 in this declaration.  Prior to signing this declaration, I was provided with a full

TLER MENDELSON
10fessional Corporation
049 Century Park East
5th Floor
Angeles, CA  90067 3107

4.

DECLARATION OF EDUARDO MORA

1  opportunity to carefully review this declaration and freely make any corrections and

2  additions of any kind.  I verify that the information I have provided in this declaration

3  is true and correct.

4       I declare under penalty of perjury under the laws of the United States and

5  the State of California that the foregoing is true and correct.

6       Executed this _2nd_ day of _May_ , 2011, at Carson, California.

7

8                                              Eduardo Mora

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TLER MENDELSON
10PERSSIONAL CORPORATION
349 Century Park East
5th Floor
Angeles, CA 90067 3107

5.

DECLARATION OF EDUARDO MORA

# DECLARATION OF CARLOS MOSQUERA

## DECLARATION OF CARLOS MOSQUERA

I, Carlos Mosquera, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.      I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.      I am currently employed by CEVA Freight, LLC ("the Company") as a Lean Expert in Torrance, California. I have been an employee of the Company or its predecessor entities for approximately two and a half years. Prior to becoming a Lean Expert, I worked for approximately fifteen months (October 2007 – January 2009), in management training, during which time I was an non-exempt employee.

3.      My current supervisor is Eddie Centeno, although I have also been supervised by Steve Arthur and Marcel Braithwaite over the course of my employment with the Company.

4.      During the time that I was in management training, I would work in various departments at the Company in order to gain a better understanding of the Company's operations. Because I was working in the Company's various departments during training, I did not have a set schedule for this time period, and the hours which I would work would fluctuate.

5.      Because I worked in the majority of the departments at the Company while I was in training, I also became familiar with the different job positions in each department. However, I have never heard of the position "Freight Forwarder," nor am I aware of any other employee within the Company who has held that position. Generally, position titles in the Company are tied to a specific department, while freight forwarding is the general line of work that the Company is engaged in.

6.      When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contains the Company's various policies, including policies related to meal break, rest breaks and timekeeping. Shortly after I

1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2010 Century Park East
5th Floor
Los Angeles, CA 90067 3107

DECLARATION OF CARLOS MOSQUERA

Case 2:09-cv-04957-CAS-SS   Document 44-2   Filed 05/20/11   Page 36 of 88   Page ID
#:1859
Case 2:09-cv-04957-CAS-RC   Document 24-2   Filed 07/26/10   Page 98 of 100   Page ID
#:1043

1    received the handbook, I reviewed the various policies contained in it. I believe that

2    these policies can also be found on the Company's intranet website.

3         7.    In addition to reviewing the handbook, I have also been informed

4    of the Company's policies through management and Human Resources ("HR").

5    Based on my personal review of the handbook, and my discussions with management

6    and HR, I have familiarized myself with the Company's meal period, rest break and

7    time records policies.

8         8.    With regard to meal periods, I understood at all times while in

9    training that I was been permitted to take an unpaid meal period of at least 30 minutes

10   during each of my shifts.  Because my schedule would fluctuate during training, I

11   would not always take my lunch break at the same time each day.  However, I would

12   always take my lunch break within five hours of starting my shift, as I was informed

13   by my managers and HR that I was required to do so under California law.

14        9.    At no point in time since I have worked for the Company has

15   anyone ever asked me to skip a lunch for any reason.

16        10.   On a couple of occasions during my training period, I forgot to

17   clock out (or clock back in) for my lunch break, although I did in fact take a lunch

18   break.  On those occasions, I filled out a missed meal period authorization form, and

19   submitted it to my supervisor who approved it in every instance.  Every time that I

20   submitted a missed meal period authorization form, my time records were corrected,

21   and I was paid for all time that I worked.

22        11.   In addition to my lunch break, I also understood that I was

23   permitted to a paid rest break of fifteen minutes on two separate occasions daily.  I

24   gained this knowledge from the handbook as well as from discussions with my

25   managers and HR.  As a non-exempt employee while in training, I followed Company

26   policies concerning required break times.

27        12.   When I was in management training, I did take both of my rest

28   breaks the large majority of the time.  Typically, I would take my first rest break

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

Case 2:09-cv-04957-CAS-SS   Document 44-2   Filed 05/20/11   Page 37 of 88   Page ID
#:1860
Case 2:09-cv-04957-CAS-RC   Document 24-2   Filed 07/26/10   Page 100 of 100   Page ID
#:1045

1   performed any off-the-clock work since being employed with the Company, nor have

2   any of my managers, supervisors, or other employees of the Company ever asked me

3   to work off the clock.

4          19.    I have provided this declaration voluntarily.  I was not promised

5   any benefit, nor threatened in any way, in exchange for the testimony I have provided

6   in this declaration.  Prior to signing this declaration, I was provided with a full

7   opportunity to carefully review this declaration and freely make any corrections and

8   additions of any kind.  I verify that the information I have provided in this declaration

9   is true and correct.

10          I declare under penalty of perjury under the laws of the United States and

11   the State of California that the foregoing is true and correct.

12          Executed this ___ day of _July_ , 2010, at _Los Angeles_, California.

13

14

15                                         Carlos Mosquera

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107

4.

DECLARATION OF CARLOS MOSQUERA

# DECLARATION OF ASHLEY PILOT

## DECLARATION OF ASHLEY PILOT

I, Ashley Pilot, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.      I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.      I am currently employed by CEVA Freight, LLC ("the Company") as a Domestic Specialist in Carson California.  I have been an employee of the Company or its predecessor entities since October 2006.  I started off as a Administrative Clerk, working in various departments, and was promoted to Domestic Specialist approximately one week ago.

3.      As an Domestic Specialist, my duties include working closely with drivers to set them up for deliveries and making sure they close all the jobs they do. If there are any issues, I figure out a way to get deliveries done promptly by the due date. I work more with deliveries than pick-ups.

4.      As an Administrative Clerk, I did a lot of data entry and transferring freight to another department.

5.      I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, from Tuesday through Saturday.   Tuesday through Thursday, my shift typically starts at four in the afternoon and ends at 12:30 a.m. On Fridays, I work from three in the afternoon to 11:30 p.m.  Saturday, I am schedule to work from noon to 8:30 p.m. However, I decide to come in early so I can leave early.  Thus, I generally work from 11:30 a.m. through 7:30 p.m. on Saturdays.

6.      My current manager is Michelle Getty and my supervisor is Steve Hart.  Over the course of my employment with the Company, I have also been supervised by Jim Salas and Miguel Medina.

7.      When I was hired by the Company, I received an Employee Handbook ("handbook") from Patricia, who works in payroll. The handbook

ITTLER MENDELSON
Professional Corporation
2049 Century Park East
5th Floor
in Angeles, CA  90067 3107

1.

DECLARATION

1  contained the Company's various policies.  After I received the handbook, I reviewed
2  the various policies contained in it.

3      8.    Based on my review of the handbook and based on trainings and
4  information shared with me throughout my employment with the Company, I am
5  familiar with the Company's meal period and rest break policies and policies
6  regarding accurately recording my time.

7      9.    With regard to meal periods, I have understood throughout my
8  employment that I have been permitted to take an unpaid meal period of at least 30
9  minutes during each of my shifts.

10     10.   During my employment with the Company I have always taken my
11  unpaid meal period.  I generally take my lunch period within the first five hours I
12  work. I usually go my lunch period at 8:30 p.m. or 8:45 p.m., but never after 9:00 p.m.
13  I'm punctual about this because I either meet friends who work at the dock or I go
14  meet somebody at Columbia Burger so I am rarely late for my meal period.

15     11.   Once, I left for my lunch on time, but forgot to clock out. I then
16  filled out a missed punch slip. My supervisor signed the slip and then we turned it into
17  the timekeeper, who corrected it on the system.  My manager has never refused to
18  correct my time punches or to compensate me for all of the hours I worked.

19     12.   If I decide to eat at the facility, I typically eat my lunch in the
20  break area behind the docks or the break room near my work station.

21     13.   At no time was I ever told by any of my supervisors, or anyone
22  else at the Company, that I could not take a meal period.

23     14.   Based on my review of the handbook and other training and
24  communications I received during my employment, I also understood that I was
25  permitted to a paid rest break of fifteen minutes for each four hours worked.

26     15.   During my employment with the Company I generally spend my
27  rest periods reading a book, going on Facebook or checking Twitter on my mobile

28

ITTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
n Angeles, CA  90067 3107

2.

DECLARATION

1  phone. I use this break time to catch up socially.  I typically take my rest break in the

2  break room.

3       16.    If I ever choose not to take my rest breaks, it is because I want to

4  get my work done rather than be bored during a break sitting by myself in the break

5  room.  If I do not take a rest break, it is my own personal choice.

6       17.    At no time during my employment with the Company was I ever

7  told by any of my supervisors, or anyone else at the Company, that I could not take

8  the rest breaks permitted me by the Company.

9       18.    During my employment with the Company, I have understood that

10  I am required to accurately record the start and end of my workday on Kronos.  I am

11  also required to accurately record when I take my meal period by clock in and out.  I

12  also understand that "off-the-clock" work is strictly prohibited (i.e., work without

13  reporting any time worked on my time records).

14       19.    Once, I clocked out of work and then something came up so I

15  continued working. My supervisor, Steve Hart, saw this and said I needed to clock

16  back in.  He made me fill out a missed punch slip and I was compensated overtime for

17  my time spent working. I checked my paycheck to ensure I was paid for this overtime.

18  Instances like this are extremely rare and it may have only happened the one time.

19       20.    Additionally, I review my time records every other day to ensure

20  they are accurate. My time records are either almost always accurate or corrected by a

21  missed punch slip.

22       21.    The Company has always paid me accurately for the all the time  I

23  worked.

24       22.    I have on occasion worked overtime while employed by the

25  Company.

26       23.    Whether and when I work overtime was determined entirely by my

27  workload on a given day. Also, if we have meetings to attend, that sets us back

28  regarding work and I may have to work overtime. I am either told that I need to work

ITLER MENDELSON
ROFESSIONAL CORPORATION
1049 Century Park East
8th Floor
Angeles, CA  90067 3107

3.

DECLARATION

1   overtime or I can ascertain that overtime is required in order to get tasks done for the

2   next day.  Once I have determined that I need to work overtime, I ask my supervisor

3   for permission. A reason and estimate of overtime hours is always required.  Once my

4   supervisor has approved the overtime, he or she will sign an overtime form.

5        24.    The Company has always paid me accurately for any overtime I

6   worked and I consistently check my paychecks to ensure this.

7        25.    As  part  of  my  job  as  a  Domestic  Specialist  and  as  an

8   Administrative Clerk, I enter shipping transactions on the Company's computer

9   systems.  I am informed that some of these electronic transaction records suggest that

10  someone with my user identification entered transactions during hours when I was not

11  punched in on the Company's timekeeping system.  I also understand that at least one

12  of these transactions was input well before I started my shift.  For example, there is a

13  time stamp of 8:37 a.m., but I have never come in that early to work  before.  The

14  earliest I have come into work has  been 9:00 a.m. As a result, I do not believe that I

15  personally entered that transaction.

16       26.    During my employment with the Company, I have  not worked

17  while off the clock, nor have I input any transactions during the times stated in these

18  records.

19       27.    While I do  not make a practice of giving my Worldport logon

20  information to other employees, I have given such information to my former

21  supervisor, Miguel Medina. He needed to send something and asked for my

22  information.

23

24

25  //

26  //

27  //

28

ITTLER MENDELSON
Professional Corporation
2049 Century Park East
5th Floor
s Angeles, CA  90067 3107

4.

DECLARATION

28.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.   Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this ⟨⟩ day of ⟨⟩, 2011, at ⟨⟩, California.

ASHLEY PILOT

C:\Documents and Settings\pshroff\Desktop\CEVA Secondary Blitz Declaration Template.doc

.ITTLER MENDELSON
\ PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
os Angeles, CA 90067 3107

5.

DECLARATION

# DECLARATION OF VANESSA RUIZ

### DECLARATION OF VANESSA RUIZ

I, Vanessa Ruiz, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.     I am currently employed by CEVA Freight, LLC ("the Company") as a Logistics Project Lead in Carson, California.  I have been an employee of the Company since 2006.  I have also held the positions of  Logistics Specialist and Logistics Specialist II.

2.     As a Logistics Specialist, my duties included data entry and customer service.  I was then promoted to Logistics Specialist II.

3.     After about two years at the position of Logistics Specialist II, I was promoted to my current position, which is Logistics Project Lead.  As Logistics Project Lead, I oversee the work of a group of employees, and ensure that work is being completed.  Also, the problems of the group that I oversee get escalated to me.

4.     I currently work at the Company's Carson facility located at 18120 Bishop Ave., Carson, California 90746.  My shift typically starts at 7:00 a.m. and ends at approximately 4:00 p.m.  However, I am currently in training, and therefore my schedule has recently changed so as to coordinate with the person who is conducting my training.

5.     My current supervisors Andrew Witt and Matthew Gard at the Carson facility.  I am also supervised by Junaid Sultan, who is the  Logistics Manager at the Torrance facility.   Up until approximately two months ago, I worked at the Torrance facility.

6.     When I was hired by the company in 2006, I read and signed a variety of new hire paperwork.  An employee in the Human Resources department explained that I am entitled to a one hour meal period within the first five hours of my shift, and a rest period for every four hours that I work.

7.     With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30

1.

DECLARATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1   minutes during each of my shifts.  However, I typically take a one hour meal period

2   each day that I work.

3           8.      During my employment with the Company I generally ensure that I

4   take my unpaid meal period between the fourth and fifth hours of my shift.  On some

5   occasions, I purchase my lunch from one of the two nearby shopping centers.  At

6   other times, I will bring a lunch to work and take my meal period in my car or break

7   area.

8           9.      While I almost always take my meal period before the fifth hour of

9   my shift, there have been a handful of occasions where I have taken my meal period

10  approximately some minutes after the five hours.  This does not happen often.  When

11  it has occurred, I have always been compensated for my meal period, and I am very

12  good at checking to make sure that I have been compensated.  Also, when this has

13  occurred, my managers always remind me that I need to take my meal period before

14  the fifth hour of my shift.

15          10.     At no time was I ever told by any of my supervisors, or anyone

16  else at the Company, that I could not take a meal period.  In fact, my managers

17  encourage me to always take my meal period before the fifth hour of my shift.

18          11.     Based on what I learned from Human Resources when I began at

19  the Company in 2006, I also understood that I was permitted to a paid rest break of

20  fifteen minutes for each four hours worked.

21          12.     During my employment with the Company I generally take my

22  first rest period after the first two hours of my shift.  I take a second rest period at

23  approximately 2:00 p.m. when my shift begins at 7:00 a.m.  I take my breaks in the

24  rest area inside of the warehouse, which has a vending machine.

25          13.     At no time during my employment with the Company was I ever

26  told by any of my supervisors, or anyone else at the Company, that I could not take

27  the rest breaks permitted me by the Company.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

2.

DECLARATION

14.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday.  I punch in and out using the WorldPort system F-Key.  Employees are required to check their time daily, and I do so at the end of each working day to ensure that my times are accurate. I am also required to accurately record when I take my meal period by punching in and out using the WorldPort system F-Key.

15.     I have been told on numerous occasions that "off-the-clock" work (i.e., work without reporting any time worked on my time records) is not allowed and is unacceptable.   I have never been told to work off-the-clock, and have never observed other employees working off-the-clock.

16.     Every day before I leave the facility, I check my time for accuracy. Sometimes there are errors in the system regarding my time.  When this occurs, I fill out a "missed punch" slip.  Then, my manager or supervisor signs the slip.  I am always check to make sure that the time has been corrected and that I am compensated for the time that I actually worked on each day.  My manager has never refused to correct my time punches or to compensate me for all of the hours I worked.

17.     The Company has always paid me accurately for the all the time  I worked.

18.     I have on occasion worked overtime while employed by the Company, especially recently because I am in training.   In fact, I presently work overtime approximately three days per week for a couple of hours.  Overtime must always be pre-approved.   The process for pre-approval requires me to contact my supervisors at the Carson location, Mr. Witt or Mr. Gard, either via telephone or e-mail.  They then sign an overtime approval form.

19.     The Company has always paid me accurately for any overtime I worked.

20.     As part of my job as a Logistics Project Lead, I enter shipping transactions on the Company's computer systems.  I mainly work with WorldPort and

3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1    Class, and I have a separate and distinct username and password for each of the

2    systems.

3           21.    On one occasion, I returned to the facility two hours after my shift

4    ended to participate in a conference call.  However, I punched in during this time, and

5    was paid overtime for my attendance.  I also worked on an account, Office Depot, that

6    required me to work some days during the day and other days, a second shift or swing

7    shift.  During this time, my username and password for Worldport were being used by

8    another employee during times when I was not at work.  However, I was always

9    clocked in for every transaction I personally entered.

10          22.    I am informed that some of these electronic transaction records

11   suggest that someone with my user identification entered transactions during hours

12   when I was not punched in on the Company's timekeeping system.   The records

13   apparently show that my username entered a customer transaction late at night while I

14   was not clocked in.  These transactions could not have been entered by me.  Although

15   there was a period of time for about six months when I was working swing shifts,  I

16   always clocked in during the time when I worked swing shifts, and was always

17   compensated for this time.

18          23.    During my employment with the Company, I have not worked

19   while off the clock, nor have I input any transactions at any time when I was not

20   clocked in.   The only explanation I can think of for why a transaction would have

21   occurred outside of my shift would be if another person had incorrectly entered my

22   username instead of their own by mistake, given that my username could have been

23   one digit off from another employee's.

24

25

26   //

27   //

28   //

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

4.

DECLARATION

24. I have provided this declaration voluntarily. I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration. Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind. I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this ___ day of May, 2011, at Carson, California.

_____
VANESSA RUIZ

# DECLARATION OF CATHERINE STROHM

## DECLARATION OF CATHERINE T. STROHM

I, Catherine T. Strohm, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2. I am currently employed by CEVA Freight, LLC ("the Company") as a Customer Service Representative in Carson, California. I have been an employee of the Company or its predecessor entities as a Customer Service Representative for approximately 3 years.

3. As an Customer Service Representative, my duties included handling customer accounts, such as Office Depot and Nike. I do a lot of data input and also handle forwarding shipments to stores that are being built. I also forward shipments to different locations throughout Southern California.

4. I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, though I used to work at the Torrance facility. I work from Monday through Friday. My shift remains pretty constant, and I work 8 a.m. to 5 p.m. daily.

5. My current supervisor is Junaid Sultan in Torrance. My immediate supervisor here at the Carson facility is Antoine Belote. Over the course of my employment with the Company, I have also been supervised by Miguel Medina, Charles Hans and others, whose names I cannot recollect.

6. When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. I received the handbook, I reviewed the various policies contained in it.

7. Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

1.

DECLARATION

8. With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.

9. During my employment with the Company I have always taken my unpaid meal period. I generally take a one hour lunch, though at times I have taken a half hour lunch if I have a doctor's appointment. When I worked at the Torrance facility, I would go home to for my meal period. As I did not have a mobile phone at this time, going home for my meal period gave me time to make personal phone calls. Once I shifted to the Carson facility, however, I take my lunch outside. Sometimes I eat with my co-workers, but I prefer to generally eat my lunch outside.

10. I have never missed a meal period. At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period. The Company is very insistent that all employees take their lunch on time and before the fifth hour worked. In fact, I am encouraged to take my lunch hour after the first four hours I work. I try to make a habit of taking my meal period at around noon on a daily basis.

11. Based on my review of the handbook and other training and communications I received during my employment, I also understand that I am permitted to a paid rest break of fifteen minutes for each four hours worked.

12. During my employment with the Company, I have seldom taken 15 minute rest periods. When I do take my rest breaks, I will get up to use the restroom or get something to drink.

13. I choose not to take my rest breaks because I wanted to finish my work and leave as early as possible. When I do not take rest breaks, it is always my own personal choice. At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107

2.

DECLARATION

14.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday by punching in and out of the timekeeping system.  I am also required to accurately record when I take my meal period by clocking in and out of the system.  I believe this system is called "Krons."  I use the Worldport system to bring this application up, type in the word "clock" and punch in and out.

15.     I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).  I have never punched out, but continued working.  No supervisor has ever told me to engage in this practice.  In fact, my supervisors have told me never to clock out and continue working.  I am well aware that working "off-the-clock" is forbidden and not condoned at all by the Company. I have never seen another employee working "off-the-clock."

16.     There have, however, been occasions when I forgot to hit the F-10 key on my computer when clocking in and out.  Failing to do this creates errors in the timekeeping program.  When this occurs, I ~~usually~~ (or ALWAYS) fill out a missed punch slip, which my supervisor then signs.   The slip then goes to payroll, who fixes it error on the system. My manager has never refused to correct my time punches or to compensate me for all of the hours I worked.

17.     Additionally, I review my time records on a daily basis to ensure they are accurate.  I have never located any error and have always been compensated for my time worked.

18.     When there are tasks that must be completed by the following day, I know I must work overtime to complete them. Whether or not I work overtime depends on my workload on a given day, by the particular account I am working on and time requirements.   I must always ask my supervisor for permission to work overtime.

19.     In the past, I have rarely worked overtime while employed by the Company.  In the last couple weeks, however, I have been working overtime regularly

3.

DECLARATION

TTLER MENDELSON
PROFESSIONAL CORPORATION
2048 Century Park East
5th Floor
Los Angeles, CA  90067 3107

1  because of a change in the system with one of our customers.  Lately, I work overtime

2  daily for one to two hours. Also, I must fill out an overtime sheet and have it approved

3  by my immediate supervisor.

4     20. The Company has always paid me accurately for any overtime I

5  worked.

6     21. As part of my job as a Customer Service Representative, I enter

7  shipping transactions on the Company's computer systems.  I am informed that some

8  of these electronic transaction records suggest that someone with my user

9  identification entered transactions during hours when I was not punched in on

10  CEVA's timekeeping system.  I also understand that some of these transactions were

11  input hours after I clocked off and left the facility for the day.

12     22. During my employment with the Company, I have consistently

13  observed people sharing logon information for Worldport and Class.  I personally

14  have shared my logon information with other employees, including new hires and

15  temporary employees who do not have their own log on information.

16     23. Also, some employees may have log on information for one

17  system, but not another.  For example, I predominately and largely work with

18  Worldport, not Class, and I no longer have logon information for Class. As a result, if

19  I ever have work to do on the Class system, I will need to borrow a co-worker's logon

20  information.  This type of exchange of logon information happens constantly at the

21  Company.

22     24. Once I give my logon information to another employee, it is not

23  guaranteed that that employee works the same shift as me. Temporary and new

24  employees may work day shifts one day and then take my logon information and use

25  it for a swing shift later. Also, once they have my logon information, they could easily

26  give it to another employee to use and I would never know that my logon information

27  has been shared with an additional employee.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107

4.

DECLARATION

25.     Though our Worldport system passwords change every 90 days, we have a constant influx of new and temporary employees coming in. Sometimes they stay and work for a while, other times they are gone after a few days. People come and go frequently at the Company.

26.     During my employment with the Company, I have not worked while off the clock.  As a result, if I am not clocked in as working and a transaction is entered using my logon information, I do not believe that I was personally responsible for executing that transaction.

27.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.   Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this _29_ day of _April_, 2010, at _Carson_, California.

_____
CATHERINE T. STROHM

DECLARATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107

# DECLARATION OF MILDRED TOWBRIDGE

Case 2:09-cv-04957-CAS-SS   Document 44-2   Filed 05/20/11   Page 57 of 88   Page ID
#:1880
Case 2:09-cv-04957-CAS-RC   Document 24-2   Filed 07/26/10   Page 85 of 100   Page ID
#:1030

## DECLARATION OF MILDRED TROWBRIDGE

I, Mildred Trowbridge, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.     I am currently employed by CEVA Freight, LLC ("the Company") as an Export Specialist 4 in Torrance, California. I have been an employee of the Company or its predecessor entities since August of 2000. I have also held the positions of Customer Service Supervisor from 2000 until approximately 2006.

3.     As an Export Specialist 4, I work on the "Beckman" account. I only handle this account. My duties for this account include operations, customer service, rate negotiations, and anything else this account needs.

4.     I currently work at the Company's Torrance facility located at 19600 Western Ave., Torrance, California 90501, from Monday through Friday from 6:00 a.m. and to 3:00 p.m.

5.     Although the Company is in the business of freight forwarding, I have never held the title of "Freight Forwarder," and to my knowledge, no such position exists within the Company.

6.     My current manager is Oski Sfetcu. Over the course of my employment with the Company, I have also been managed by Camille Utter, Ron Obard and Frank Linchtenburger.

7.     When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies, such as the company's meal break policy and rest break policy. I also believe that the handbook contained policies regarding timekeeping. After I received the handbook, I reviewed the various policies contained in it. I also believe these policies can also be found on the Company's intranet website. I also receive an updated handbook yearly. When I receive my new handbook I sign an acknowledgement and receipt.

1.

DECLARATION OF MILDRED TROWBRIDGE

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107

8.  Although I am aware that I am entitled to at least a 30 minute unpaid lunch break every day, I am normally scheduled for a full hour lunch break. During my employment with the Company, I have always taken my lunch break. In fact, over the past several years with the Company, I have been told on numerous occasions by my supervisors and managers, including Camille Utter and Lorretta Atuatasi that if I do not take my lunch break, I can be written up and potentially terminated.  I would estimate that in an average year, I am reminded 2-3 by my managers and/or supervisors, that I must take my lunch break everyday.

9.  I usually take my lunch break from 11:30 a.m. to 12:30 p.m., and I always try and take my lunch break within 5 hours of the start of my shift.  I have never skipped any lunch breaks since being employed by the Company, as I know that doing so could result in possible disciplinary action.  Depending on how I am feeling on a given day, I may go out to lunch with some of my co-workers, or I may buy lunch and bring it back and eat it in the break room.  Sometimes I am very busy and so I will only take 30 or 45 minutes for my lunch, but when I do, I always clock back in when I get off of lunch, and I am paid for all time that I work.  On those occasions where I take less than a full hour for my lunch break, it is always my own decision, and no one at the Company has ever told me to take a lunch break shorter than 1 hour.

10.  In addition to my lunch break, the Company also provides me with 2 separate 15-minute paid breaks each day.  The first of these breaks is approximately 2 hours after I start my shift, and the second of these breaks is usually about 2 hours after lunch.  No one at the Company has ever asked me to skip my rest breaks. However, I only take these rest breaks some of the time, because I usually don't want to stop what I'm working on.  Again, in every instance where I have skipped a rest break, it has been my own choice and no one has ever asked or suggested that I skip these breaks.  Generally when I do take a rest break, I will just chat with my co-workers or call my children.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107

2.

DECLARATION OF MILDRED TROWBRIDGE

11.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday, in addition to clocking out and back in for my lunch break. I use a computer program called Kronos to record my daily time. I always enter all of my time on a daily basis, however, there have been occasions where I have entered my time inaccurately. Typically, this is a situation where I forget to punch out at the end of the day or punch back in after returning from lunch. When this has happened, I submit a missed punch slip to my manager, so that my time can be corrected. In every instance in which I have submitted a missed punch slip, I have been credited and paid for the hours that I actually worked.

12.     On occasion, I do work overtime. Typically, we are supposed to get pre-authorization before working overtime, however, there are situations where this is not possible. Notwithstanding, in every instance where I have worked overtime, including those situations in which I did not get pre-authorization, I have been paid for all the time that I have worked. I have never been reprimanded for working overtime on any occasion since I have been employed by the Company.

13.     I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records). I have never worked off-the-clock, with the Company, nor has anyone from the Company ever requested that I work off the clock.

14.     At the end of each pay period, I am required to sign a Time Card Certification, verifying that I the hours which I entered into Kronos are correct. Prior to signing this Certification, I have noticed on some occasions that my hours are inaccurate, for the same reasons stated above (i.e. forgot to punch out at end of shift, forgot to punch back in for lunch, etc.). In those situations where my hours worked have been inaccurate, I have informed my supervisor, and my hours have been corrected in every instance.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107

3.

DECLARATION OF MILDRED TROWBRIDGE

15.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.   Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this ___1___ day of July, 2010, at Torrance, California.

Mildred Trowbridge

4.

DECLARATION OF MILDRED TROWBRIDGE

# DECLARATION OF MILDRED TROWBRIDGE

## DECLARATION OF MILDRED TROWBRIDGE

I, Mildred Trowbridge, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2. I am currently employed by CEVA Freight, LLC ("the Company") as an Export Specialist IV in Carson, California. I have been an employee of the Company or its predecessors (Eagle Freight and EGL) since August 2000. I also held the position of Customer Service Supervisor from 2000 until 2006. I currently work at the Company's Carson facility located at 18120 Bishop Ave, Carson, California 90746, Monday through Friday from 6:00 a.m. until 3:00 p.m.

3. Although I am an Export Specialist, my duties and responsibilities differ from most other Export Specialists. Throughout my eleven (11) of employment with the Company I have worked alongside several other Export Specialists and have come to learn of their duties and responsibilities. First, I only handle  account for "Beckman" whereas other Export Specialists handle several different accounts. Moreover, I provide Beckman's shipment needs "from A to Z," meaning that I handle customer service, ensure that the file for a shipment is complete and ready to be processed and shipped, then I enter the data into the Class shipping system to create the house airway bill, and I then ensure the warehouse has the correct data to pull the freight, label and stage for shipping. In comparison, based on my experience, other Export Specialists typically handle only one portion of the above described shipment process, such as only customer service or operations (data entry), whereas I do it all for the Beckman account.

4. When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. These policies can also be found on the Company's intranet website. After I received the handbook, I reviewed the various policies contained in it.

1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

5.    Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's time recording policies.

6.    During my employment with the Company, I have always understood that I am required to accurately record the start and end of my workday. I am also required to accurately record when I take my meal period. I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).

7.    I have always abided by the Company's time recording rules. When I arrive for work, I log onto my assigned computer by entering my username and password to unlock the computer. Once the computer is unlocked, I then immediately open the Company's time recording program, Kronos, enter my employee identification number, and clock-in. I then remain clocked-in until I take my lunch. I clock out at the beginning of my lunch period and then back in when I return from lunch. Also, once the computer is unlocked, I am then able to access several different programs set to my preferences such as Outlook and our various shipping systems discussed below.

8.    As part of my job as an Export Specialist IV, I enter shipping transactions on the Company's shipping systems. During my employment, the Company has used three separate shipping systems: WorldPort, Class and FastTrack ("shipping system(s)"). The Company no longer uses FastTrack.

9.    Throughout my employment I have utilized all three shipping systems. Since the Company stopped utilizing FastTrack in July 2010, I currently only use Class and sometimes WorldPort (which I only utilize for Mexico shipments). To log onto the various shipping systems, I enter a username and password. My shipping system usernames and passwords are all different from one another and they are also from my user identification number and password I use to log onto my

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

2.

DECLARATION OF MILDRED TROWBRIDGE

1  computer upon arriving for work, which it is also different that my Kronos
2  identification number.

3          10.    While logged onto a shipping system with my username and
4  password, I can check on the status of a shipment. If I enter any information to that
5  shipment, I am informed and believe that the shipping system captures my
6  information and saves it as part of the shipment history, along with the time I entered
7  the information.

8          11.    Because CEVA wishes to keep accurate shipping records, we are
9  discouraged from providing our shipping system usernames and passwords to other
10  employees. However, various occasions have come up when I have used another
11  employee's username and password and/or another employee has used mine to enter
12  date to a shipment history. These situations typically arise with:

13          i.  **New Employees**: Typically, upon their hire, new employees do not
14               have assigned usernames and passwords to access shipping
15               systems and need to borrow another employee's username and
16               password if they need to access a shipping system. I am aware that
17               it can sometimes take several weeks for a new employee to receive
18               his or her username and password. In the meantime, if the new
19               employee needs to access a shipping system and make changes or
20               update a shipment, he or she must borrow another employee's
21               username and password. If the new employee then adds
22               information to a shipment using the borrowed username and
23               password, that shipment's shipping history captures the
24               information of the owner of the username and password utilized to
25               access the shipping system. Throughout my employment with the
26               Company, I have lent my usernames and passwords for the various
27               shipping systems to several other employees.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.

DECLARATION OF MILDRED TROWBRIDGE

ii. **Expiration Of A Password**: Passwords for the shipping systems expire periodically and for lack of use.  For example, if I do not update my password every few months it will expire. I will then need to either attempt to log on to determine whether the shipping system will allow me to update my pass word.  If it will not, I will then need to seek assistance from our helpdesk to obtain a new password. However, if my password has expired I and needed to urgently log onto a shipping system to enter information, I would simply borrow an active username and password from a coworker. Any entries that I input using a coworker's username and password would demonstrate my coworker's username and on the shipment history although I input the information.  Again, throughout my employment with the Company, I have witnessed employees provide their usernames and passwords for the shipping system to other employees.

iii. **Entry Info At Another Employee's Desk:** Also, it is common at CEVA to sometimes enter data to a shipment while at another employee's desk using his or her  username and password.  For example, I sometimes visit my coworkers at their work stations and desks to discuss work and other matters.  If my coworker is logged onto a shipping system with his or her username and password and I need to enter information to shipment in that open shipping system, I simply pull up the shipment and enter the information.  However, because I did not log into the shipping system with my username and password, the information I entered will show up as an entry under the username of my coworker because the shipment history captures the information of the owner

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

4.

DECLARATION OF MILDRED TROWBRIDGE

1  of the username and password and will not show that I made a
2  change to the shipment.

3      12.    I have never entered a transaction while working off-the-clock.  I
4  am informed, however, that some of the shipping electronic transaction records
5  suggest that I was working when I was not.  For example, on March 24, 2010, a
6  transaction record on FastTrack indicates that I entered a transaction on at 5:03 a.m.,
7  Pacific Standard Time.  However, I did not clock-in that morning until 6:07 a.m.,
8  Pacific Standard Time, as shown in my time records.  Similarly, on February 18,
9  2010, another transaction record indicates that I entered a transaction on FastTrack on
10 at 11:17 p.m., Pacific Standard Time.  However, I had already clocked-out that day at
11 11:46 a.m., Pacific Standard Time.  I am certain that I did not enter either of these
12 transactions, nor any other off-the-clock transactions. I can only suggest that another
13 employee in possession of my username and password entered these and any other
14 off-the-clock transactions bearing my username.

15     13.    I have provided this declaration voluntarily.  I was not promised
16 any benefit, nor threatened in any way, in exchange for the testimony I have provided
17 in this declaration.  Prior to signing this declaration, I was provided with a full
18 opportunity to carefully review this declaration and freely make any corrections and
19 additions of any kind. I verify that the information I have provided in this declaration
20 is true and correct.

21     I declare under penalty of perjury under the laws of the United States and
22 the State of California that the foregoing is true and correct.

23     Executed this __6__ day of __MAY__, 2011, at Carson, California.

24
25     _____
    Mildred Trowbridge
26
27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

5.

DECLARATION OF MILDRED TROWBRIDGE

# DECLARATION OF RUBEN VEGA, JR.

## DECLARATION OF RUBEN VEGA, JR.

I, Ruben Vega Jr., do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.     I am currently employed by CEVA Freight, LLC ("the Company") as a Dispatcher in Carson, California. I have been an employee of the Company or its predecessor entities for approximately 13 years.

3.     I started with the Company as a Freight Handler, working on the dock and moving freight with forklifts. After about two years, I moved on to become Operations Agent, which deals with customer service. Two or three years later, I earned my current title as Dispatcher. As Dispatcher, I am in charge of dispatching and routing 159 drivers. I make routes for all the drivers to for pick-ups.

4.     I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, from Monday through Friday. My shift starts at 7:30 a.m. and ends at 4:30 in the afternoon.

5.     My current supervisor is Michelle Abbey. Over the course of my employment with the Company, I have also been supervised by William Leonard, Mark Getty, and Mark England.

6.     I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time. I am especially familiar with these policies because during our daily pre-shift meetings, my supervisors, Michelle Abbey and Phil Aseanas, remind everyone to take their meal periods within the first five hours of their shifts. They also remind us to take our breaks on time.

7.     With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.

TTLER MENDELSON
PROFESSIONAL CORPORATION
2040 Century Park East
5th Floor
Angeles, CA 90067,3107

DECLARATION

8.      During my employment with the Company I have always taken my unpaid meal period and have almost always taken my meal period within the first five hours worked.   I typically eat my lunch at 12:30 p.m.  As I never bring my lunch, I always eat out and use a full hour for lunch in order to relax.  Generally I eat alone, but I may eat with a co-worker once in a while if our meal periods are simultaneous.  I typically choose to eat down the street, where there are a variety of restaurants.

9.      At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period.

10.     Based on my knowledge of the Company policies and my supervisors' reminders during pre-shift meetings, I also understand that I am permitted to a paid rest break of fifteen minutes for each four hours worked.

11.     During my employment with the Company I have always taken my rest periods. I typically take my first rest period at around 10:30 or 11 in the morning, either before or after the pre-shift meeting. My second rest period is taken around 3 or 3:30 in the afternoon.  During my rest breaks, I sit in the downstairs break room with the vending machines and relax. I will either check my phone messages, go on Facebook and/or listen to music.

12.     At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.

13.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday.  I am also required to accurately record when I take my meal period.  I use the clock on the computer system to log in and out on a daily basis.

14.     I understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).

15.     While it does not happen often, the computer at times records my hours incorrectly.  For example, I recall at least one instance where I punched out for

2.

TTLER MENDELSON
Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

1    lunch at around 12:30 p.m., but the computer did not capture it. As a result, when I

2    returned for lunch an hour later, the computer read me as clocking *out*, not back *in*.

16.    When errors like the above occur, the computer thinks I have taken my lunch too late. In the above instance, I fill out a missed punch slip for my supervisor to review. After reviewing it, she will sign in and hand it over to timekeeping, who will fix the error.

17.    My manager has never refused to correct my time punches or to compensate me for all of the hours I worked.

18.    Additionally, I routinely review my time records everyday ensure they are accurate. Though errors can occur, like above, it is generally free of errors. The Company has always paid me accurately for the all the time I worked.

19.    Though I do not work a lot of overtime, I have done so in the past. while employed by the Company.

20.    Whether and when I work overtime was determined entirely by my workflow, the volume of pick-ups, and driver availability. I work overtime approximately once a month, but only for an hour or forty-five minutes.

21.    The Company has always paid me accurately for any overtime I worked. I check my paycheck to ensure proper payment of overtime when applicable.

22.    As part of my job as a Dispatcher, I enter shipping transactions on the Company's computer systems. I am informed that some of these electronic transaction records suggest that I entered transactions during hours when I was not punched in on the Company's timekeeping system. I also understand that some of these transactions appear to be input after I had allegedly clocked out for the day.

23.    However, with the computer error mentioned above, though the computer believes I may have left for the day at 1:30 p.m., that is, in actuality, the time I am returning to work from my one hour lunch period. As a result, a transaction at 4:10 p.m. is not truly off the clock. Indeed, that is within my regular shift, as I leave for the day at 4:30 p.m. I believe I filled out a missed punch slip and was

3.

DECLARATION

1  compensated for my full shift.  As I make it a practice to check my paychecks, I am

2  sure I was compensated fully for my time spent working.  I am not sure why the

3  computer records do not show this correction.

4        24.    During my employment with CEVA, I have not worked while off

5  the clock.  Another practice that may occur with the Company is employees leaving

6  for lunch or for the day and clocking out, but leaving their computers on. If someone

7  then walks by the computer and needs to print something or do some work, a time

8  stamp will be generated even though that employee is, in reality, away from their

9  computer.

10        25.    I have provided this declaration voluntarily.  I was not promised

11  any benefit, nor threatened in any way, in exchange for the testimony I have provided

12  in this declaration.  Prior to signing this declaration, I was provided with a full

13  opportunity to carefully review this declaration and freely make any corrections and

14  additions of any kind.  I verify that the information I have provided in this declaration

15  is true and correct.

16        I declare under penalty of perjury under the laws of the United States and

17  the State of California that the foregoing is true and correct.

18  Executed this _2nd_ day of _May_, 2011, at _11:47_ , California.

   _Carson_

20                        RUBEN VEGA, JR.

DECLARATION

TTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Angeles, CA 90067.3107

# DECLARATION OF
# ERNIE VILLAVERDE

# DECLARATION OF ERNIE VILLAVERDE

I, Ernie Villaverde, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.  I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.  I am currently employed by CEVA Freight, LLC ("the Company") as an Air Export Specialist in Carson, California. I have been an employee of the Company or its predecessor entities for approximately three years. I have worked at the Company's Carson facility for approximately one year. Prior to that, I worked at the Company's Torrance facility.

3.  As an Air Export Specialist, my duties include data entry and processing house bills.

4.  I currently work at the Company's Carson facility located at 18120 Bishop Ave., Carson, California  90746, from Tuesday through Saturday. My shift typically starts at 8:00 a.m. and ends at 5:00 p.m. I have worked this schedule for the past four days. In the two months prior, I worked from Tuesday through Saturday, beginning at 4:00 a.m. and finishing at 1:00 p.m. Prior to that schedule change, I worked my current schedule, Tuesday through Saturday from 8:00 a.m. through 5:00 p.m. for approximately one month. The rest of the time I have worked at the Company, I worked from Monday through Friday from 5:00 p.m. through 2:00 a.m.

5.  My current supervisor is Dalva Rinchiuso. Over the course of my employment with the Company, I have also been supervised by Hemanti Patel and Oski Sfectfu.

6.  When I was hired by the Company, I participated in an orientation session. During that session, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. After I received the handbook, I skimmed the various policies contained in it.

TLER MENDELSON
PROFESSIONAL CORPORATION
049 Century Park East
5th Floor
Angeles, CA  90067 3107

1.

DECLARATION

7.     Based on my review of the handbook and based on information shared with me throughout my employment with the Company by members of the Human Resources department and my managers, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

8.     With regard to meal periods, I have understood throughout my employment that I have been permitted to take an unpaid meal period of at least 30 minutes during each of my shifts.  I typically take a one hour meal period.

9.     During my employment with the Company I have almost always taken my unpaid meal period within the first five hours of my shift.

10.     On about four occasions during the three years I have worked at the Company, I took my meal period up to approximately thirty minutes after the fifth hour of my shift.  I did so because I was in the middle of a hot shipment, and wanted to finish my work before taking my meal period.  I have never missed a meal period during the three years I have worked at the Company.

11.     At no time was I ever told by any of my supervisors, or anyone else at the Company, that I could not take a meal period.  If I took a meal period later than the fifth hour of my shift, it was my own personal choice.

12.     Based on my review of the handbook and based on information shared with me throughout my employment with the Company by members of the Human Resources department and my managers, I also understood that I was permitted to take a paid rest break of fifteen minutes for each four hours worked.

13.     During my employment with the Company I have almost always chosen not to take a rest period.  However, I have been told that I am permitted to take these breaks if I choose.  Instead, I prefer to get my work done.

14.     At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted by the Company.

2.

ITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
os Angeles, CA  90067 3107

DECLARATION

15.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday using the Kronos system.   I use my username and password to log into my computer, open the Worldport application, and open Kronos.  I use Kronos to punch in and out of work each day.  I also use this method to record when I take my meal period by punching out at the beginning of my meal period and punching in when I return.

16.     I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).  I have never worked when I was not punched in, nor have I ever observed any other employees working off-the-clock.  This strict policy has been explained to me during orientation, and by my supervisors and managers.

17.     Additionally, I routinely review my time records for each pay period to ensure they are accurate. There have been approximately two occasions where my time was not recorded accurately due to a problem with the time clock. When this happened, I submitted a missed punch slip to my supervisor, who then approved it.  After, I double checked to make sure that the times were corrected.  My manager has never refused to correct my time punches or to compensate me for all of the hours I worked.

18.     The Company has always paid me accurately for the all the time  I worked.

19.     I have often worked overtime while employed by the Company. When I previously worked at the Torrance facility, I worked overtime approximately four days per week for up to one hour.   At the Carson facility, I work overtime approximately two days per week for up to two hours.

20.     Whether and when I work overtime is determined entirely by my workload on a given day.

21.     Overtime must be pre-approved by a supervisor.   I tell my supervisor how much overtime I will need and the reason for it approximately one

3.

DECLARATION

hour before my shift ends.  My overtime is always approved and I am always compensated.  There has never been an instance when I was not compensated for the overtime that I worked.  I am always punched into Kronos when I work overtime.

22.     As part of my job as an Air Export Specialist, I enter shipping transactions on the Company's computer systems.  I am informed that some of these electronic transaction records suggest that someone with my user identification entered transactions during hours when I was not punched in on CEVA's timekeeping system.  I also understand that some of these transactions were input hours before I clocked in for the day.

23.     During my employment with CEVA, I have not worked while off the clock, nor have I input any transactions during the times stated in these records.  I have also never witnessed anyone doing this.

24.     I do not have an explanation for how these records were created.  While I have heard of employees sharing their usernames and passwords before, I have never done so.

25.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.  Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this _____ day of _____, 2011, at _____, California.

ERNIE VILLAVERDE

TTLER MENDELSON
Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107

# DECLARATION OF JAVIER YEPEZ

## DECLARATION OF JAVIER YEPEZ

I, Javier Yepez, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.    I am currently employed by CEVA Freight, LLC ("the Company") as a Export Specialist II in Carson, California. I have been an employee of the Company or its predecessor entities for approximately 7 years.   I began working with the Company as a Freight Handler, working in the dock and breaking down palettes. After about a year and a half, I became an Export Specialist.

3.    As an Export Specialist, my duties involve handling special customer accounts. I do everything that needs to be done on these accounts, including talking with the customers, processing shipments and making bookings.

4.    I currently work at the Company's Carson facility located at 18120 Bishop Avenue, Carson, CA 90746, from Monday through Friday. My shift typically starts at 9:30 a.m. and ends at 6:30 p.m.

5.    My current supervisor is Loretta Atuatasi. Previously, when I worked in the warehouse, I was supervised by Jim Salas.

6.    When I was hired by the Company, I received an Employee Handbook ("handbook"). The handbook contained the Company's various policies. These policies can also be found on the Company's intranet website. After I received the handbook, I reviewed the various policies contained in it.

7.    Based on my review of the handbook and based on trainings and information shared with me throughout my employment with the Company, I am familiar with the Company's meal period and rest break policies and policies regarding accurately recording my time.

8.    Also as a reminder, every couple months I receive an e-mail from the Company reminding me to take my meal and rest breaks. I also have meetings

1.

ITTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
s Angeles, CA 90067.3107

1    with my supervisor, Loretta, to discuss my performance. During this time, she

2    reminds me to take my meal periods within first the five hours I work. Loretta also

3    tells me to accurately record my time on the computer when I leave and come back for

4    lunch.

5          9.     With regard to meal periods, I have understood throughout my

6    employment that I have been permitted to take an unpaid meal period of at least 30

7    minutes during each of my shifts.

8          10.    During my employment with the Company, I have always taken

9    my lunch period, typically for one full hour. I generally take my lunch hour starting at

10   around 1 p.m., but I definitely make sure to take my lunch before 2 p.m. As I rarely

11   bring my own lunch, I will usually go out for lunch with coworkers.

12         11.    At no time was I ever told by any of my supervisors, or anyone

13   else at the Company, that I could not take a meal period.

14         12.    There are very rare times when I am a few minutes late in taking

15   my lunch.  This occurs when I want to finish a time-sensitive project, such as not

16   missing an airline-cut off for delivery.  I avoid taking a late meal period because I am

17   lectured by my supervisor on the importance of being on time with my meal period.

18         13.    Based on my review of the handbook and other training and

19   communications I received during my employment, I also understood that I was

20   permitted to a paid rest break of fifteen minutes for each four hours worked.

21         14.    During my employment with the Company, I generally take my

22   first rest break around 11:30 a.m.  I use this time to return missed phone calls, make

23   phone calls regarding my children. I may also call my brother and speak with him

24   during my rest break. I take my first break in the break room upstairs.

25         15.    Though I take my first rest break of the day, I sometimes choose

26   not to take my second rest break.  I would rather use this time to finish up work.  If I

27   do not take a rest break, it is always my own personal choice.

28

TTLER MENDELSON
Professional Corporations
2049 Century Park East
5th Floor
Los Angeles, CA. 90067 3107

2.

DECLARATION

16.     At no time during my employment with the Company was I ever told by any of my supervisors, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.  In fact, I am usually told by Loretta and others that I should take my rest breaks.

17.     During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday by clocking in and out of the system.  I am also required to accurately record when I take my meal period.  I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).

18.     There have, however, been extremely rare occasions when I start working, but forget to clock in.  For example, I can recall once I got a phone call from an airline or a customer and picked up to start working, but it slipped my mind to clock in.  Thus, I started working before clocking into the system.

19.     Though I rarely forget to clock in and out, when this instance happened, I filled out a missed punch slip with my correct start time.  Loretta approved the missed punch slip and turned it into the timekeeper, who input it into the system and updated my timesheet.  My manager has never refused to correct my time punches or to compensate me for all of the hours I worked.  I checked to make sure I was compensated correctly for my actual time.

20.     Additionally, I review my time records at the end of everyday to ensure they are accurate.  I also review my paychecks for accuracy.  I recall once instance, in October 2010, when I submitted a missed punch slip, but was not compensated correctly for the time due to the punch slip not going to the right department.  I was given a manual, or live, check to compensate me for my time.  I have not experience problems like that before or after the incident.

21.     The Company has always paid me accurately for the all the time I worked.

DECLARATION

TTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107

22.     I have worked overtime sporadically throughout my employment with the Company.   For the last six months, I have been working overtime approximately 3 times a week, for about 3 hours. I never work more than four hours of overtime on a given day.

23.     When I need to work overtime is determined by me, generally by 5:30 p.m.  At this time, I will see what still remains to be done, such as making sure all freight is received and checked and loaded.  I then contact my supervisor to get her approval for overtime. I give her my reasons for overtime as well as an estimate of how long I think I will need to work overtime.

24.     The Company has always paid me accurately for any overtime I worked.

25.     As part of my job as Export Specialist II, I enter shipping transactions on the Company's computer systems.  I am informed that some of these electronic transaction records suggest that someone with my user identification entered transactions during hours when I was not punched in on the Company's timekeeping system.  I also understand that some of these transactions were input well before I clocked in for the day.

26.     My supervisor, Loretta, has my password and login information for Worldport. I have not come into work as early as the transaction entered reads; I arrive at work at around 9:30 a.m., not 6:45 a.m.  I am aware, however, that my supervisor, Loretta, comes in at 6:00 a.m.

27.     During my employment with the Company, I have not worked while off the clock, nor have I input any transactions during the times stated in these records.

28.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.  Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and

4.

DECLARATION

TTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
t Angeles, CA  90067.3107

additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this ___2___ day of _MAY_ , 2011, at _CARSON_ ., California.

_____
JAVIER YEPEZ

ITTLER MENDELSON
PROFESSIONAL CORPORATION
2048 Century Park East
5th Floor
Los Angeles, CA 90067-3107

DECLARATION

# DECLARATION OF IGNACIO ZUNIGA

# DECLARATION OF IGNACIO ZUNIGA

I, Ignacio "Jerry" Zuniga, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2. I am currently employed by CEVA Freight, LLC ("the Company") as a Freight Handler - Fork Lift in Torrance, California. I have also held the position of Freight Handler from approximately 2005 until 2010. As a Freight Handler and Freight Handler - Fork Lift, I work on the loading docks, as opposed to in the offices.

3. I have been an employee of the Company or its predecessor entities since approximately 2005. I also worked for the Company or its predecessor as a contract employee from 2003 to approximately 2005.

4. When I first started working for the Company, I was based in our Torrance facility located at 19600 Western Ave., Torrance, California. From 2009 to 2010, I worked in our Rancho Dominguez, California facility. I also worked a couple of months at our Carson, California facility in 2010. By 2011 I was back at our Torrance facility.

5. The Rancho Dominguez facility is very different from the Torrance and Carson facilities. The Rancho Dominguez facility only has 15 docks for loading and unloading trucks whereas as the other two facilities each have over 50 docks. Also, the Rancho Dominguez facility handles shipments from only two companies – Target and Office Depot, whereas the two other facilities handled and processed shipments from several different customers.

6. Also, while at the Rancho Dominguez, I only worked on the Target shipments. On the other hand, in Torrance and Carson I worked on general accounts. Further, while working in Rancho Dominguez, I oversaw 30 – 40 employees. However, in Torrance, I am assigned to train one to five temporary employees when

TTLER MENDELSON
PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107

1.

DECLARATION OF IGNACIO ZUNIGA

1  we are busy with a high volume of shipments. Otherwise, when we have a low
2  volume, I do not train anyone.

3         7.    For the last two years my schedule was the same. My shift
4  typically started 8:00 a.m. and ended at 5:00 p.m., Monday through Friday. Prior to
5  two years ago, the hours and days that I worked varied.  However, I was still
6  scheduled to work 5 days a week and 8 hours in a shift.

7         8.    My current supervisor is Joe Sandi. Mr. Sandi became my
8  supervisor in the last couple of months. Before Mr. Sandi, and the during the last 5
9  years, my supervisor was Dharmesh Patel.  My manager for the last 5 years has been
10  Junaid Sultan.

11         9.    When I was hired by the Company, I received an Employee
12  Handbook ("handbook").  The handbook contained the Company's various policies.
13  These policies can also be found on the Company's intranet website.  After I received
14  the handbook, I reviewed the various policies contained in it.

15        10.    Based on my review of the handbook and based on trainings and
16  information shared with me throughout my employment with the Company, I am
17  familiar with the Company's meal period and rest break policies and policies
18  regarding accurately recording my time.

19        11.    With regard to meal periods, I have understood throughout my
20  employment that I have been permitted to take an unpaid meal period of at least 30
21  minutes during each of my shifts.

22        12.    During my employment with the Company I have always taken my
23  unpaid meal period.  On occasion, however, I have taken my meal period after
24  working for 5 hours. This is very rare, but sometimes I am in the middle of
25  completing an assignment or meeting with customers and, although I could leave my
26  to take my meal period before the start of my fifth hour of work, I choose not to
27  because I want to either finish my assignment or because I do not want to have my
28  customers waiting for me.

'TLER MENDELSON
ROFESSIONAL COOPERATION
949 Century Park East
5th Floor
Angeles, CA. 90067-3187

DECLARATION OF IGNACIO ZUNIGA

13.   I typically eat my lunch onsite in the break room. I bring my lunch and store it in the refrigerator.  After eating my lunch I remain and relax in the break room and talk to my coworkers.

14.   At no time was I ever told by any of my supervisors, my manager, or anyone else at the Company, that I could not take a meal period.  I have also never been told by anyone that he or she could not take a meal period and no other employee has ever complained to me that he or she could not take, or was instructed not to take, his or her meal period.

15.   Based on my review of the handbook and other training and communications I received during my employment, I also understood that I was permitted to a paid rest break of fifteen minutes for each four hours worked.

16.   During my employment with the Company I sometimes take my rest break.  For me, rest breaks are needed only for smoking, if you are tired, or if you are hungry.  I am usually not hungry before or after my lunch period and I do not smoke.  Therefore, I only take breaks when I am tired.  However, if I wanted to, during my 8 hour shift, I could take two 15 minute rest breaks afforded to me by the company.

17.   At no time during my employment with the Company was I ever told by any of my supervisors, my manager, or anyone else at the Company, that I could not take the rest breaks permitted me by the Company.  I have also never been told by anyone that he or she could not take a rest break and no other employee has ever complained to me that he or she could not take, or was instructed not to take, his or her rest break.

18.   During my employment with the Company, I have understood that I am required to accurately record the start and end of my workday as well as clock-out-and-in for lunch.  I also understand that "off-the-clock" work is strictly prohibited (i.e., work without reporting any time worked on my time records).  In fact, during my first year of employment in 2003, I was working on a Sunday and one the of the

3.

TLER MENDELSON
EOFESSIONAL CORPORATION
049 Century Park East
5th Floor
Angeles, CA  90067 3107

1   Company's Vice Presidents, Randy Mondola, saw me working and came up to me and

2   said "I hope you are not working off-the-clock!" I responded that I was not. From this

3   moment forward, I knew that off-the-clock work was not tolerated by the Company.

4          19.    There have, however, been occasions when I forgot to clock-out or

5   back in. When this happened, I submit a missed punch slip to my manager or

6   supervisor. My missed punch slips have always been approved I have always been

7   paid accurately for the time that I have worked. Additionally, I routinely review my

8   time records for each pay period to ensure they are accurate.

9          20.    I have on occasion worked overtime while employed by the

10  Company.  Whether and when I work overtime was determined entirely by my

11  workload on a given day.

12         21.    Typically, I must obtain permission from my supervisor or

13  manager to work overtime.  Although I am usually permitted to work overtime, on

14  occasion I have been told I cannot. On those occasions I was not permitted to work

15  overtime, I clocked out at the end of my shift and left work.  In addition, the Company

16  has always paid me accurately for any overtime I have worked.

17         22.    As part of my job, although very rarely because I work on the

18  docks and not in the office, I enter shipping transactions on the Company's computer

19  shipping systems.  I am informed that some of these electronic transaction records on

20  the shipping systems suggest that someone with my user identification entered

21  transactions during hours when I was not punched in on CEVA's timekeeping system.

22  For example, I was informed  that one of these transactions occurred 5 hours after I

23  had clocked-out for the day. I know I did not make this transaction because, as I

24  mentioned before, I do not work off-the-clock.  Although it is discouraged by the

25  Company, to help a fellow employee, on occasion, I have loaned out my user

26  identification and password.  Anytime I have transactions appearing outside of my

27  time on the clock, I believe another employee must be using my user identification

28  and password to create a transaction.

TLER MENDELSON
ROFESSIONAL CORPORATION
049 Century Park East
5th Floor
Angeles, CA  90067 3107

4.

DECLARATION OF IGNACIO ZUNIGA

23.     During my employment with the Company I have worked and spoken with Rick Smith, the Plaintiff in this action.  Mr. Smith never complained to me that he was forced to work through his meal period or rest break or was forced to work off-the-clock.

24.     I have provided this declaration voluntarily.  I was not promised any benefit, nor threatened in any way, in exchange for the testimony I have provided in this declaration.  Prior to signing this declaration, I was provided with a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind.  I verify that the information I have provided in this declaration is true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this _29_ day of April, 2010, at Torrance, California.

Ignacio "Jerry" Zuniga

DECLARATION OF IGNACIO ZUNIGA